**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| VICTOR BRADSHAW, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CASE NO. 4:10-CV-78-CDL-MSH |
| | * | 42 U.S.C. § 1983 |
| LAWRENCE STEWART, | * | |
| | * | |
| Defendant. | * | |
| | * | |

## REPORT AND RECOMMENDATION

On July 16, 2010, Plaintiff, currently an inmate at the Hancock State Prison in Sparta, Georgia, filed the above styled Section 1983 action against Defendant Stewart. On September 28, 2010, Defendant filed a Motion to Dismiss, to which the Plaintiff failed to respond.[1] For the reasons described below, Defendant's motion to dismiss should be granted.

## FACTUAL BACKGROUND

Plaintiff brought this action pursuant to 42 U.S.C. § 1983, against Lawrence Stewart, the Superintendent of the Columbus Transitional Center. (Compl. 5, ECF No. 1.) In his Complaint, Plaintiff contends that he stored personal items in a locker at the Transitional Center which were not returned to him when he returned to retrieve them. (*Id.*) Plaintiff alleges that the Center failed to comply with standard operation procedures in storing and securing his property. (*Id.*)

---

[1] Plaintiff filed a motion for extension of time in which to respond to the motion to dismiss on the date it was due, but has failed to file any other pleading with the Court since that time. Plaintiff's Motion for Extension of Time was denied on February 4, 2011.

# DISCUSSION

## I. Standard on Motion to Dismiss

When considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do[.]" *Id.* Although the complaint must contain factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims, *id.* at 556, "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable,'" *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556).

## II. Eleventh Amendment Immunity

As an initial matter, Defendant has asserted the defense of Eleventh Amendment immunity with regard to any claims made against him in his official capacity. (Mot. to Dismiss 14.) The Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. To determine whether a defendant is immune from liability under the Eleventh Amendment, the Eleventh Circuit Court of Appeals has held that "a defendant need not be labeled a 'state officer' or 'state official,' but instead need only be acting as an "arm of the State," which includes agents and instrumentalities of the State." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003). The *Manders* Court set out the four factor test used to ascertain whether an entity is an "arm of the State" in carrying out the function at issue: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Manders* at 1309.

The United States Supreme Court has held that the Eleventh Amendment bars claims against a State or one of its agencies, "absent a waiver by the State or a valid congressional override," where the State is the real party in interest or when any monetary recovery would be paid out of state funds. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The State of Georgia has not consented to being sued under 42 U.S.C. § 1983. The Defendant, who is employed by the State of Georgia as the Superintendent/Warden of the Columbus Transitional Center, is an "official" of the State and, therefore, receives the protection of the Eleventh Amendment given to states. As such, he may not be sued for compensatory damages absent a waiver. Thus, Plaintiff's claims for compensatory damages against the Defendant in his official capacity must fail.

**III. Exhaustion of Administrative Remedies**

Pursuant to the Prison Litigation Reform Act (PLRA), Congress mandated that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, the United States Supreme Court has held that an inmate must fully and properly exhaust all available administrative remedies before he can file a section 1983 lawsuit in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The court has no discretion to waive the exhaustion requirement in the event a claim has not been fully and properly exhausted prior to filing. *See Alexander v. Hawk*, 159 F.3d 1321, 1325-26 (11th Cir. 1998); *see also Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that the exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). "Proper" exhaustion requires a prisoner to comply with the specific prison grievance procedural requirements. *See Woodford*, 548 U.S. at 95. In addition, an inmate must "provide with his grievance all relevant information reasonably available to him." *Brown v. Sikes*, 212 F.3d 1205, 1208 (11th Cir. 2000).

Because "failure to exhaust is an affirmative defense under the PLRA, . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549

4

U.S. at 216. However, a complaint may still be dismissed pursuant to the PLRA "if an affirmative defense, such as failure to exhaust, appears on the face of the complaint." *Anderson v. Donald*, 261 F. App'x 254, 255 (11th Cir. 2008). Satisfaction of the exhaustion requirement is a precondition to filing a lawsuit, and therefore exhaustion must be accomplished before the suit is filed. *McDaniel v. Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) (per curiam) (citing *Alexander*, 159 F.3d at 1325-26). Requiring exhaustion prior to filing "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204.

The Eleventh Circuit has addressed the proper form of a pretrial motion challenging a plaintiff's failure to exhaust his administrative remedies, holding:

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it "should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment."

*Bryant v. Rich,* 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368-69 (9th Cir. 1988)). Defendant therefore properly raised his exhaustion defense in an unenumerated Rule 12 motion to dismiss. *See id.* at 1375. When motions to dismiss are based on issues not enumerated under Rule 12(b), such as the instant case, Federal Rules of Civil Procedure Rule 43(c) governs and "permits courts to hear evidence outside of the record on affidavits submitted by the parties." *Id.* at 1377 n.16. Thus, as Defendant has done here, the parties may submit documentary evidence concerning the exhaustion issue and doing so will not

5

require the conversion of the motion to dismiss into a summary judgment motion. In addition, the judge may resolve factual questions concerning a plaintiff's alleged failure to exhaust nonjudicial remedies, "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." *Id.* at 1376 (footnote omitted).

Shortly after its decision in *Bryant*, the court developed a two-step process to assist courts in deciding a motion to dismiss for failure to exhaust administrative remedies. *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). Specifically, the court held:

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. . . . If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion. The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies. Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies.

*Id.* at 1082-83 (internal citations omitted); *see also Williams v. Marshall*, 319 F. App'x 764, 767 (11th Cir. 2008) (per curiam). Defendants, however, "bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082.

Defendants in the instant case contend that Plaintiff failed to exhaust the prison's grievance procedure with respect to his claims. In support of this contention, Defendants provide the affidavit of Joanne Hunding, the Grievance Coordinator at Hancock State Prison.

6

Hunding explains that upon entering the Georgia Department of Corrections, each inmate is given a copy of the Orientation Handbook for Offenders, which contains the grievance procedure. (Aff. ¶¶ 6-7, Sept. 27, 2010; ECF No. 10-2.) An inmate is required to file a written grievance within ten days of the incident about which he complains. (*Id.* ¶ 10.) An inmate may appeal the response to his grievance by filing a formal grievance within five days of the response. (*Id.*) If the informal grievance was filed out of time, the inmate is allowed to state why, and the grievances filed out of time are reviewed for good cause. (*Id.*)

After having reviewed Plaintiff's entire grievance file, Hunding avers that Plaintiff arrived at the Columbus Transitional Center on February 11, 2010, and signed a "Transitional Resident Surrender of Property in the Event of Escape" form (ECF No. 10-5) on February 24, 2010. (Aff. ¶ 11.) On March 19, 2010, Plaintiff left the Transitional Center and failed to return that day. (*Id.*) Plaintiff was reported as an escapee on March 20, 2010. (*Id.*) Plaintiff was captured out of state on June 2, 2010, and taken to Rutledge State Prison. (*Id.*) On June 28, 2010, Plaintiff filed an informal grievance concerning the loss of his property. (*Id.* at 12.) Because it was filed outside of the ten day window for filing an informal grievance, Plaintiff's grievance was rejected. (*Id.*) Hunding further avers that Plaintiff did not request, nor did he file, a formal grievance in the matter. (*Id.* at 12.)

As stated above, when considering a 12(b)(6) motion to dismiss, the Court must accept as true all facts set forth in the plaintiff's complaint and limit its consideration to the pleadings and exhibits attached thereto. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In this case, Plaintiff stated in his Complaint that "he was not able to appeal" the denial of his

grievance "because it was rejected." (Compl. 4.) The grievance procedure requires, however, that he fully exhaust his administrative remedies by filing a formal grievance. As such, Plaintiff has admitted that he failed to fully and properly exhaust the prison's grievance policy. Therefore, the Defendant is entitled to a dismissal of the claims against him.

## IV. Failure to State a Claim

### A. Fifth Amendment

Defendant next argues that Plaintiff's claims should be dismissed because he failed to state a claim pursuant to the Fifth Amendment. (Mot. To Dismiss 8.) In his Complaint, Plaintiff asserts that he is being deprived of his property "according to the Fifth Amendment." (Compl. 5.) Because the Plaintiff fails to state which Fifth Amendment clause of which he is claiming a violation, the Court assumes he is alleging a deprivation of his property without due process of law. The Fifth Amendment of the United States Constitution states that a person may not "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. In this case, however, Plaintiff does not allege that the acts in question were committed by a federal official. For that reason, Plaintiff's Fifth Amendment claim must be dismissed. *See Riley v. Camp,* 130 F.3d 958, 972 n. 19 (11th Cir.1997) ("The Fifth Amendment obviously does not apply here-the acts complained of were committed by state rather than federal officials.").

### B. Fourteenth Amendment

Plaintiff's claims, which would be more appropriately brought under the Due Process

clause of the Fourteenth Amendment, will be addressed out of an abundance of caution.[2] The Due Process Clause of the Fourteenth Amendment, in relevant part, states that "nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. Amend. XIV § 1.

The United States Supreme Court has held that a prisoner's claim for deprivation of property does not amount to a violation of due process under the United States Constitution whether the deprivation of property resulted from an intentional, non-negligent act of a state employee or pursuant to an established state procedure as long as the state provides an adequate post-deprivation remedy for the prisoner's property loss. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986). The State of Georgia provides adequate post-deprivation remedies whereby Plaintiff may sue the defendants in the state courts and recover any damages due him for the loss of his property. *See* O.C.G.A. § 51-10-1. Such a cause of action still remains available to Plaintiff.[3] Thus, because an adequate post-deprivation remedy exists in Georgia state courts, no procedural violation can be found to have occurred in violation of the Fourteenth Amendment in this case.

---

[2]Since Plaintiff was held in a state prison and his claims are against a non-federal government official, his claims are properly brought under the Fourteenth Amendment due process clause and not the Fifth Amendment due process clause. *Porter v. White*, 483 F3d 1294, 1297 n.1 (11th Cir. 2007).

[3] O.C.G.A. § 9-3-32 provides: "Actions for the recovery of personal property, or for damages for the conversion or destruction of same, shall be brought within four years after the right of action accrued."

## V. Qualified Immunity

"The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir.2009) (internal quotation marks omitted). The first qualified immunity inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808 (2009)(based on the circumstances of the particular case, the courts are now able to decide which of the two inquiries should be addressed first); *Seigert v. Gilley*, 500 U.S. 226, 232 (1991). The second qualified immunity question is whether the right violated was clearly established at the time of the alleged wrongful acts. *Id.* at 201. "The contours of the right must be sufficiently clear that a reasonable official would understand that he was doing violates that right." *Id.* If either element of the qualified immunity test is decided against the Plaintiff, the Defendant is entitled to qualified immunity.

In this case, the Plaintiff has failed to prove that any of the rights guaranteed to him through the United States Constitution were violated by the Defendant as is required in *Saucier*. Because no right has been violated, there is no need to address the second prong of *Saucier*. Therefore, it is recommended that Defendant's Motion to Dismiss be granted as to

any claims made against him in his individual capacity.

## VI. Respondeat Superior

Defendant also moves the Court to dismiss this action against him under the prevailing authority regarding supervisory responsibility. In *Cottone v. Jenne*, 326 F.3d 1352 (11th Cir. 2003), the Eleventh Circuit addressed the issue of supervisory responsibility in cases where a qualified immunity defense was raised. The *Cottone* Court addressed the issue as follows:

> It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondent superior or vicarious liability. Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in a deliberate indifference to constitutional rights or when facts support "an inference that the supervisor directed the subordinates would act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous.

*Cottone,* at 1360 (internal quotation marks and citation omitted). Thus, in order to establish that a supervisor is liable for the acts of his subordinates, the Plaintiff must allege that the supervisor personally participated in or somehow caused the constitutional deprivation. In his Complaint, Plaintiff makes a bare and general assertion that the "Columbus T.C. has neglected to follow the SOP standards for securing property." (Compl. 4.) Nothing in Plaintiff's pleadings show, however, that there was any alleged personal participation by

11

Defendant in the acts in question; that Defendant had any causal connection with events related to Plaintiff's case; that Defendant put in place any custom or policy at the prison which has resulted in a violation of Plaintiff's Constitutional rights; or that Defendant even had any knowledge that Plaintiff's personal property was removed. As such, it is recommended that Defendant is entitled to a dismissal of this action.

## CONCLUSION

WHEREFORE, IT IS HEREBY RECOMMENDED that Defendant's Motion to Dismiss be GRANTED for the foregoing reasons. Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff may file objections to this Recommendation in writing with the United States District Judge within FOURTEEN (14) days after being served with a copy hereof.

SO Recommended, this 9th day of February, 2011.

S/ Stephen Hyles
UNITED STATES MAGISTRATE JUDGE